Your argument is 20-1928 Microsoft Corporation v. FG SRC. Mr. McAuliffe, is that how you pronounce your name? It is. Thank you, Your Honor. All right. Good morning. Please proceed. Good morning, Your Honors. May it please the Court. Joe McAuliffe for Appellant, Microsoft Corporation. Your Honors, in the proceeding below, the Board got a lot right. In its analysis of Claim 18, however, it failed to address all of our arguments and erroneously interpreted the selecting content and transmitting content elements of that claim. Microsoft's petition fairly raised that Claim 18 was unpatentable for obviousness over the Obelix and Skillin combination. In particular, with respect to the selecting content and transmitting content steps, it argued those steps were satisfied for the same reasons as Claims 2 and 3, which include identical claim terms. Counsel, this is Judge O'Malley. You have a pretty high hurdle here, don't you? We review the Board's decisions to the extent that they limit arguments or find certain arguments not to have been preceded for an abuse of discretion, don't we? You do. The Board never made such a finding. It just never addressed this argument. It never found that we never made the argument. It listed in detail which arguments were raised by the petition and which were not. In two different charts, it made very clear that Claim 18 was not presented in connection with Obelix and Skillin together. It listed what it believed we raised. I don't think it listed what we did not raise. I think that's an important distinction. I think it just overlooked. Maybe it's an important distinction, Mr. McAuliffe. This is Judge Prost. I know you're not compelled to ask for rehearing, but in a circumstance where you think you absolutely raised something and the Board just missed it or lost the pages or something, I mean, rehearing is the way to go on that, wouldn't you think, in fairness to your client as well as the Board? Why not pursue the rehearing route? Your Honor, we thought that the appeal, given that this was not the only issue, and one of them was obviously a claim interpretation that the appeal route was a better approach. I think my own experience with motions for rehearing at the Board is that they don't usually go anywhere, and they usually take a lot of time. Based on really a balancing of lots of things, we thought that an appeal was the better approach. Do we even have jurisdiction to review their determination about what claims they instituted on and what grounds they instituted on? SRC made that argument. I think you certainly do have jurisdiction to review whether the Board addressed all of the grounds that are raised in the petition. For example, in SAS, the Supreme Court found that it was error for the Board not to address everything in the petition. They certainly had jurisdiction to make that rule. Well, that was because the Board just said it wasn't going to review certain grounds that it expressly admitted were raised in the petition. Here, this is the Board's determination about what it believes was raised in the petition. That's very different than SAS. That's right, but that's still a determination that I think comes within your jurisdiction to review. This is not an institution decision. We're talking about it's a final written decision, and we have a right to appeal a final written decision, and the Court obviously has jurisdiction to review it. Mr. McAuliffe, this is Judge Prost. I think you can tell from the questioning that this is perhaps a troubling area, so why don't you move on, I suggest, to your argument on anticipation. Okay, I will, Your Honor. Thank you. Thank you very much. The Board construed the selecting content and transmitting content elements of Claim 18 at least implicitly to require an in-real-time for a current user limitation. I say at least implicitly because in the portion of their opinion, they basically say, and I think this is that Appendix 31 to 32, that the SRC argued that there's this current user limitation, and it's not satisfied because OBLEX does things in phases, and then they say we agree. So I think that is an understanding. They're adopting a certain understanding of the claim language, of claim scope. There's no support in the record for that. The language of those claim elements say nothing about current users or phases or real time. This is Judge Prost again. I hate to interrupt, but time is short. Could you just articulate to me briefly, if we agree with you and say, one, the Board used the current user, and two, that it was incorrect to do so, how does that affect the OBLEX anticipation argument? Well, OBLEX satisfies those two claim elements, the entire claim, in two separate ways. First of all, what OBLEX discloses is that users are given a modified browser that provides user data information to the OBLEX server, and that's the end data element for the claim. And that data is used to calculate a user-specific Castleman score, and then that Castleman score is used when that user runs a search on the OBLEX system. That Castleman score is used to select content search results to send back to that user. So, what you have there is you have transmitting end data elements to the OBLEX server, selecting content in response to those end data elements because they're part of what gets used to calculate the Castleman score, and then transmitting that selected content back to that user. That's one way it satisfies it. It satisfies it another way through the disclosure of the university students, the 10 university student example who are testing the system. In that situation, it's even more specifically satisfied because it's a closed set of 10 students who are all given this modified browser. So, their computers generate and provide this user activity data to the OBLEX system, which is used to create the Castleman. But, counsel, what do we do about the fact that Claim 18 expressly claims a process of accelerating access time of a remote computer to an Internet site? If you're accelerating access time, how can this be done in the kind of phasing that you're talking about or that OBLEX disposes? Well, the accelerating access time is only in the preamble, that phrase, and no one below ever raised an argument about that. It's a non-limiting portion. Are you saying that the board assumed that it was not limiting or that the board simply didn't decide whether or not it was limiting or not? No, the board never addressed it because nobody ever raised that below. We addressed it in the petition and said to the extent it's limiting, OBLEX satisfies it. And the board did address a similar language in the preamble of Claim 11. The board addressed that and agreed that OBLEX satisfied it. But, as far as the accelerating access time in Claim 18, it wasn't addressed below. But, it's a non-limiting language in the preamble. It's never mentioned again or referred to in the claim. It's not the point of the invention. Accelerating processing is clearly the point of the invention, and that's done by the use of reconfigurable processors, which nobody disagrees OBLEX used. So, that's a non-limiting element of the claim, and I think it's satisfied for the reasons we put in the petition anyway. But, I don't think the court needs to reach that because nobody raised it below, and it's non-limiting. Well, Mr. McAuliffe, can I go back to your answer to my question, which was informative about how you think OBLEX satisfies it? The difficulty I'm having in this, I think you're, I guess you're seeking reversal on the anticipation, but I assume you're also seeking alternatively remand. Because the kind of issues that you just raised are the kind of issues that the board never reached, and they're kinds of things that are in their lane rather than ours in the first instance. Is that not right? I think that's right. I mean, sure, at a minimum, we would ask for remand. But, you know, the reason we've asked for reversal is because there's two claim elements, the selecting content and transmitting content that the board found were not satisfied. They did find it satisfied in the context of claims two and three, which have the same claim margins. And so, in that sense, that's why we thought… I mean, the board made clear that it's not the same. And even when you had OBLEX and Skillen, the board found Claim 25 not obvious. So it obviously sees a distinction between Claim 18 and Claims 3 and 4. Well, it found Claim 25, I guess you mean, not obvious over OBLEX and Skillen because Claim 25 depends on Claim 18. There's a lot of different language in Claim 18 between Claims 3 and 4 and Claim 18. Well, the only language that was ever argued below was the substantially concurrent processing argument. But SRC argued that along with similar language in Claim 11, substantially parallel processing. They made the same arguments. The board addressed it with respect to Claim 11, rejected their arguments. So they have no arguments about that could save Claim 18 from an anticipation holding if you reverse this claim interpretation. There's just nothing else. Now, on appeal, they have gone to the preamble language, as Your Honor, Judge O'Malley, you mentioned. But they never made that argument below. And it's, as I think we pointed out in the briefs and I've alluded to here, we think it's just dead wrong. It's a non-limiting portion of the preamble and satisfied anyway by OBLEX. Before you conclude, just because some of these terms are pretty confusing to me, in the selecting limitation, the words are in response to said end data elements. Can you explain what exactly the end data elements are in OBLEX? Yes. In OBLEX, the users of the system – so the OBLEX server sits basically on the same machine as a web server. And the users of the system are provided a modified web browser, Mozilla Web Browser, that essentially keeps track of what they do on the web, such as visiting certain web pages and copying things and printing things. And that's called user activity data. And this modified browser sends that back to the OBLEX server for processing. That user activity data is the end data elements of the claim. And as far as the selecting content, the content identified in the petition was the web search query result. So, the same user would perform a web search. The OBLEX system would obviously get some query results. But then it would select how to rank the various results based on this Castleman score that was calculated based on those end data elements, that user activity data. So, it's selecting a content, such as query results, web query results, of the Internet site – that's the OBLEX site – in response to the said end data elements. That's the user activity data that that user had previously sent into the system. Counsel, before you sit down, what do we do with the fact that the specification talks about users only being willing to wait 20 seconds to get the results? And what you're basically proposing is a system where one user starts a search and then leaves for another person to receive the results. I mean, how is that going to happen within a 20-second time interval? Well, the 20-second time interval, of course, is not mentioned in Claim 18 or in any claim, really. And I think it's pretty well settled now just because a certain purpose or desire or end result is described in the specification. I know, but we don't ignore the specification in determining exactly what is being claimed. And we have to look at both. Absolutely. And nobody ever suggested that that was a limitation of the claim in the proceedings below. And there's no basis on this record before this court for reading it in the claim. Nobody said it's a disclaimer. Nobody said it's a definition. Nobody said that it's not the invention unless you get those results under 20 seconds. That's just not the case. The point of this invention was to use FPGAs, reconfigurable processing, in a parallel manner to process data elements that were sent from over the web. That's exactly what Obelix did two years earlier. Exactly. I believe I've used my 12 minutes at least. Yes, you have. No, I think you're into your rebuttal time. Any further questions, Judge O'Malley or Judge Lurie? No. So, let's move to the other side. In this case, it's Mr. Kaysen again. May it please the court. Jay Kaysen for the appellee, FGSRC. I'll begin by addressing the first issue. Microsoft has, in fact, raised a new theory of invalidation for the first time on appeal. The board very explicitly noted in page 60 of the appendix, and I'm quoting here, Microsoft did not challenge independent Claim 18 as unpatentable over the combination of Obelix and Skillen. In fact, a simple review of the petition shows that the only substantive argument that Microsoft made with respect to Claim 18 was anticipation by Obelix. Well, Mr. Kaysen, let me just interrupt you there. I think part of the best evidence that Microsoft comes up with to say that they did preserve the argument is that you all responded to the argument in your reply. So, one, am I not understanding the record correctly, or did you not respond to the obviousness combination that you're now saying was not presented to the board? Your Honor, Microsoft cites to appendix page 449 to say that we responded to the combination of Obelix and Skillen with respect to Claim 18. We did not. If you simply look at that section, that section was directed to dependent claims, and there were a whole bunch of dependent claims, and that was starting from appendix page 447. And there were various combinations for various dependent claims, Obelix in combination with Perkins, with Leon, with Curtis, with Davis, and Skillen. And there were a whole series of dependent claims. We did not address independent Claim 18 separately, as Microsoft is claiming. What about the next sentence? Doesn't the next sentence reference independent Claim 18? I'm sorry, Your Honor, I didn't catch that. In this section that you're talking about, doesn't the very next sentence reference independent Claim 18? It does talk about Claim 18, Your Honor, but the whole focus was on the dependent claims. What they're claiming is that we... Let's be clear. I don't have... Sorry, but just as a follow-up to Judge O'Malley's thing, are we looking at JA449? Yes, we're looking at appendix 449 and starting from 447 to 449. But I think Judge O'Malley and I are possibly looking at the same thing. We're not in the same room, obviously. But it says, Petitioner further asserts that the combination of Skillen with Obelix and Spencer renders obvious independent Claim 18, blah, blah, blah, blah, blah. So what am I missing? My only point here is, Your Honor, that we were actually making that statement in the context of addressing the dependent claims. And we were not really specifically addressing the independent Claim 18. That was my only point there. Despite your express words? I'm sorry. I mean, despite your express words, you're saying you didn't mean to address Claim 18? We didn't address Claim 18, Your Honor. If you look at those pages, you'll see we were only addressing the dependent claims there. And we were addressing all the combinations of the prior art there in those pages, 447 to 449. In any case, we still believe that even if we were to look at Obelix and Skillen, even the combination does not render Claim 18 obvious. And we've explained that in our briefs. Even if this Court would find that we, in fact, addressed that, which we did not. Specifically, Your Honor, Obelix is about an Internet search engine. It is about anticipating the usefulness of a website based on actions taken by past users. It collects the data from the past users, processes them, and the sum of those overall actions of the past users creates this cancelment score. And that is then stored in a database. The Obelix system makes clear that latter search algorithms use that data that is stored in the database to determine the usefulness of a website based on past activity. In contrast, Claim 18, which is about accelerating the access time of a remote computer, it is about doing so in real time to improve on that 22nd. Well, sir, can I ask you because, I mean, you would agree with your friend on the other side that the Board never reached the question of whether or not that preamble language is limiting or not limiting. Now I think that may be a question of law, so maybe we can reach it up here. I have to think about that. But let's assume for a moment that we do not accept that this language is limiting in the preamble. So without the accelerating access time, what are we left with in the claim language? What we're left with in the claim language is substantially concurrently processing the end data elements. And that is done where the end data elements are processed in one iteration. That is shown in Figure 14 instead of using n iterations. And that is simply not found anywhere in Obelix. Council claimed that we did not raise that. Am I wrong? Microsoft says that substantially concurrently and substantially parallel are the same thing. And that came up in other claims. Are you saying those two are different? What we're saying is that substantially concurrently processing the end data elements in a method claimed to reduce the access time did not come up anywhere else. And we made that argument, by the way, in Appendix Page 436, where we say substantially concurrently processing is not shown in Obelix. Council just said that we did not make that argument. I guess I'm a little confused because what about Claim 11? I thought Obelix was shown to cover substantially parallel. So you're saying they're different things? Your Honor, there is no parallel processing in Obelix of the end data elements. What we have is one user after another. And depending on whether the user is printing or browsing or viewing a website, there is a weight given to that user's action depending on what they were doing. And then the sum of the overall scores of the user's action is the Castleman score. There is no substantial parallel processing in Obelix whatsoever, and there is no reconfigurable processor in Skillen at all. So it doesn't even do anything to render these deficiencies. It doesn't help with any of the deficiencies. Precisely for the same reason, Your Honor, Claim 3 is not the same as Claim 18 because of the accelerating access time and because of the substantially concurrently processing. What is the response, though, to your friend on the other side saying that their argument is that Obelix does actually increase processing speed through its architecture? It may do so by storing all the past user action data in a database so that it can anticipate the usefulness of a website. But that is not what is going on here in the 687 patent. In the 687 patent, you have these end data elements from a current user who is connected to a remote computer, and you parallel process those end data elements, as shown in Figure 14, in one iteration. And that's where the benefit comes in. The counsel also made a point that the board implicitly found that there is no real-time limitation and there is no current user limitation. Well, that is not true. That determination was made only with respect to Claims 1 and 11. In fact, with respect to Claim 18, they specifically noted that even if it's not in real time, it still involved a current user. It involved a current user because of the way all the steps were set up, including the selecting content and the translating content. I guess I want to be – I'm not clear on – this is Judge Proust. Are you suggesting that here on appeal, as I understand their argument, they say remote computer, the language in the claim, is not the same thing as current user, and they're rejecting the phrase current user. That's what I understand. Now, are you saying that this is a new argument or that argument is inconsistent with what they said below? No, what we're saying is, Your Honor, there is plenty of support for the board's finding that Claim 18 involves a current user and that Oblix, in fact, involves past users. The board engaged with the expert testimony of both Dr. Stone and Dr. Humayun and accepted the testimony of FGSRC's expert. If we look at Figure 12… Well, can I ask you about that because I'm trying to find my notes here because I think I was a little confused by how you characterized that in the brief. You point to expert testimony, and this is read 33 through 39, and namely that Dr. Humayun saying the patent works data for the current user, and you said the board cited both declarations, but I think the board cited the declarations in summarizing the parties' positions, and it didn't cite that 166 that you now advance in your brief, at least on pages JA31 and 32, where it was discussing this. So I don't see confirmation for your statement that the board necessarily relied on this explicit portion of Dr. Humayun's declaration. Your Honor, on page 32, they talk about the declarations of both experts, and then they conclude, we find the patent owner's arguments to be persuasive, and that's where they looked. If we looked at the particular paragraphs of both the experts that are being cited, afterwards, the board concluded that it accepted the fact that we have remote computer 302 in Figure 12 that is being connected to the Internet, and that's the current user, and the text and structure of Claim 18, while not reciting the word current user, talks about a particular session between that remote computer and the Web site and accelerating... I'm very sorry, but you're on 32 now? This is... So I was providing some explanations, but the specific language is in page 32. Did they cite that declaration testimony? Yes, it's in Exhibit 2095. And where is it? Paragraph 178, for instance, and Exhibit 2095. Yes, but I'm trying to find where in your statement about what the board is concluding. Where is it there? So in the first part of page 32, Your Honor, they talk about what the patent owner is arguing, and previously they talked about the petitioner's arguments, and then they cite both of them, and they say we find the patent owner's arguments to be persuasive. So I was just mentioning that they engaged with both the expert testimonies and then picked one, and they found it to be persuasive because of the explanations in paragraph 176 and 178 of Exhibit 2095. Counsel, is it correct that this patent expired more than three years ago? Yes, Your Honor, the patent expired, has already expired, yes. Is it being litigated for damages? I am not entirely sure of the current status in the district court, but I believe that there is some district court proceedings. Okay. I want to also mention that we, as far as the preamble goes, we, contrary to what Microsoft Counsel Mr. McAuliffe just mentioned, in pages 413 and 414 in the appendix, we talk about accelerating access time as being important and as the entire focus of this invention. You see this accelerating access time repeatedly in the patent. And, in fact, in the claim construction section in our patent owner response, we talk about that as well. I want to also finally mention that the... Do you want to be brief because that was your time limit? I believe that dependent claims 19 to 25 are also clearly patentable because they really rely on Claim 18, which is very different from Claim 1 and Claim 11. And I'll stop right there. Thank you. Thank you. Mr. McAuliffe, rebuttal time. Thank you, Your Honor. I know I don't have a lot of time, but I would like to... And I don't want to take up a lot of it, but just to follow up on Judge Lori's point, why are we here? In other words, I think there are... Are there related proceedings that have been stayed going on in the District Court involving this patent? Yes, there's a pending District Court case in the Western District of Seattle that has stayed in view of the IPRs, including on this patent. If I may, and I'm happy to answer more questions about the District Court litigation, but it's been stayed for some time. But if I may address the substantially concurrent processing, because I think some confusion was just sown, and this was actually resolved below. The situation is that Claim 11, as I think the panel noticed, recites substantially parallel processing, and Claim 18 recites substantially concurrent processing. SRC treated it identically below, as I believe the petition did, and as I believe the board did. The board resolved that. If you look at page 30 of the joint appendix, JA30, under a heading called substantially parallel processing, it has this statement. Patent owner argues that Obelix fails to disclose substantially parallel slash concurrent processing because Obelix fails to disclose, and it goes on. And then on the next page, that section continues to the next page, and it points out that these are the same arguments that are resolved earlier under related to substantially parallel processing, and they disagree with patent owner. So, on that issue... I mean, the independent Claim 18 cannot be identical to the other claims, because there would be no basis for it to be independent from the other claims. So, what the board was doing was talking about the two concepts with respect to two different sets of claims, in their view. You are undoubtedly correct that they are not word for word identical. However, I think it's pretty well settled that two differently worded claims can read on the same disclosure in the prior art and be invalidated by it. And here, the phrase is substantially parallel processing and substantially current processing. And what we proved, and the board agreed, was that the parallel pipelining disclosed in Obelix, where the basic units are basically in a pipeline and are all processing user activity data at the same time, is both substantially parallel processing and substantially current processing. And my only point is that the board has found that for that part of the claim. Michael, am I correct that I heard the buzzer go off? That's correct. Okay. Thank you. Thank you. Thank you, Your Honors. We thank both sides, and the case is submitted.